IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIRROR FINISH PDR, LLC, and WESLEY ADAM HUFF, | |
| **Plaintiffs,** | |
| v. | Case No. 3:20-CV-00440-NJR |
| COSMETIC CAR COMPANY HOLDINGS, INC., COSMETIC CAR COMPANY, LLC, MIDWEST DENT COMPANY, AUTO DENTICIAN, INC., CHARLES DANIEL BINKLEY, ERIC STOKES, and ANDY CLAWSON, | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss filed by Defendants Cosmetic Car Company Holdings, Inc., Cosmetic Car Company, LLC, Midwest Dent Company, Auto Dentician, Inc., Charles Daniel Binkley, Eric Stokes, and Andy Clawson (Doc. 17). For the reasons set forth below, the motion is granted in part and denied in part.

## FACTUAL & PROCEDURAL BACKGROUND

In January 2010, Wesley Adam Huff ("Huff"), the owner of Mirror Finish PDR LLC ("Mirror Finish"), joined Cosmetic Car Company, LLC, Midwest Dent Company, Auto Dentician, Inc., to form a partnership known as Carmed 45 for the purpose of providing paintless dent repair services (Doc. 15). To form Carmed 45, the parties allegedly agreed to adhere to the Partnership Agreement (Doc. 18-1, pp. 6-39). The

Partnership Agreement contains a Non-compete, Nondisclosure, and Non-solicit Provision (Doc. 18-1, pp. 16-19).

Sometime in 2012, Carmed 45, LLC, was formed (Doc. 15). To form Carmed 45, LLC, Defendants contend that the parties agreed to adhere to the Operating Agreement (Doc. 18-1, pp. 1-5). The Operating Agreement includes a provision explaining that "Carmed 45, a partnership existing under the laws of Missouri [ ] is the predecessor to the Company . . . [and] [t]he terms of the Partnership Agreement of the Partnership dated January 17, 2010, a copy of which is attached hereto, including the dispute resolution and arbitration provisions, are incorporated herein and shall apply to and govern the Company, subject to the following . . . ." (*Id.* at p. 1). In March 2013, Mirror Finish and Defendants purportedly executed the "Amendment to Carmed 45, LLC Operating Agreement" to redefine the area of operations (Doc. 18-2). On March 31, 2015, Mirror Finish resigned its membership from Carmed 45, LLC (Doc. 15, p. 3).

In February 2017, Carmed 45, LLC, and Defendants filed a petition in St. Louis County Circuit Court alleging that Huff violated the Non-compete, Nondisclosure, and Non-solicit Provision of the Operating Agreement. During the course of the St. Louis County case, Carmed 45, LLC, and Defendants attempted to amend their petition three times. Despite their failure to properly amend the petition, on January 20, 2019, Carmed 45, LLC, moved for sanctions pursuant to Missouri Supreme Court Rule 61.01 and requested an entry of default judgment. Almost a year later, on December 27, 2019, the St. Louis County Circuit Court granted Carmed 45, LLC's motion for sanctions and ordered Huff's pleadings to be stricken and a default judgment to be entered on behalf

Carmed 45, LLC. The trial court entered judgment on April 10, 2020. Huff is appealing the judgment.

On March 30, 2020, Mirror Finish and Huff (together "Mirror Finish") filed a complaint against Defendants in St. Clair County Circuit Court (Doc. 25-1). According to Mirror Finish, Defendants misrepresented that they had a valuable ownership interest in Carmed 45, LLC, CM49, LLC, CM55, LLC, and CM53, LLC (Doc. 15, p. 2-3). Mirror Finish also alleges Defendants conspired to pillage customers of Carmed 45, LLC, and provide paintless dent repair services within the alleged Operations Area by and through other entities in which they have an ownership interest (*Id*.). Mirror Finish continues by alleging that Defendants conspired to self-deal, embezzle assets and customers, and deplete all entities in which Mirror Finish had an ownership interest of value to deprive Mirror Finish of their interest (*Id*. at p. 3). These activities, according to Mirror Finish, were part of a fraudulent scheme wherein Defendants conspired to misrepresent the nature and value of Mirror Finish's ownership in the CCC-related entities and to deprive Mirror Finish of the rightful income and benefits from these entities (*Id*. at p. 4).

Defendants removed the case to this Court based on federal question jurisdiction, as Mirror Finish first alleged that Defendants violated the federal Racketeer and Corrupt Organizations Act ("RICO") (Doc. 1-1, pp. 8-9). The Court also exercised supplemental jurisdiction over the state law claims, as they formed part of the same case or controversy as the RICO claim (Doc. 23, p. 4). These state law claims include unjust enrichment (Count I), fraud (Count II), breach of fiduciary duty (Count III), tortious interference with

contract (Count IV), fraudulent inducement (Count V), and civil conspiracy (Count VI) (Doc. 15).

On June 1, 2020, Mirror Finish amended its complaint, removing the RICO claim (*Id*.). Mirror Finish then filed a Motion to Remand (Doc. 19), arguing for remand on the basis that a federal claim no longer existed and, thus, the principles of economy, convenience, and fairness would be best served by remand to state court (*Id*. at p. 14). This Court denied Mirror Finish's Motion to Remand (Doc. 23).

Defendants timely filed a Motion to Dismiss, arguing the First Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b) (Doc. 17).

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

ANALYSIS

## I.    Statute of Limitations

Defendants first assert that Mirror Finish filed its original Complaint seven days after the statute of limitations expired. Defendants support this fact by arguing that the claim accrued on March 31, 2015, thus the original Complaint was seven days late based on a filing stamp of April 7, 2020 (Doc. 18, p. 7). Mirror Finish responds by noting that the original Complaint was filed on March 30, 2020, and provides an order from June 4, 2020, by the St. Clair County Circuit Court acknowledging that the Circuit Clerk's office wrongly rejected this case when it was originally filed (Doc. 25-1).

This Court finds that the St. Clair County Circuit Court order incorporates into the record the correct filing date—March 30, 2020. Indeed, "if there is proper evidence of a clerical error, the [state] court may use a *nunc pro tunc* order at any time to correct the mistake." *Peraino v. Cty. of Winnebago*, 101 N.E.3d 780, 785 (Ill. App. 2018). "Stated differently, *nunc pro tunc* orders incorporate into the record judicial actions taken by the court that were inadvertently omitted due to a clerical error." *Id.* (citing *People v. Melchor*, 871 N.E.2d 32 (Ill. 2007)); *see e.g.*, *Keller v. United States*, 657 F.3d 675, 680 (7th Cir. 2011) (refusing to strike the *nunc pro tunc* orders from an Oklahoma state court and noting that "[w]e 'ha[ve] the power, in fact the obligation, to take judicial notice of the relevant decisions of courts . . ., whether made before or after the decision under review'") (quoting *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996)).

The applicable statute of limitations for each of Mirror Finish's claims comes from Illinois law, not Missouri law. "[A]s to procedural matters, the law of the forum controls,

and in Illinois, '[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights.' *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002)). Because the statute of limitations in Illinois for Mirror Finish's claims is five years, and Mirror Finish filed on March 30, 2020 — not April 7, 2020 — Mirror Finish's Amended Complaint is not time barred.

## II.    Res Judicata

Defendants also maintain that Mirror Finish's claims are barred by res judicata. Before evaluating the merits of Defendants' res judicata arguments, the Court must determine what substantive law applies. Because this Court considers Mirror Finish's claims under its supplemental jurisdiction, it applies Illinois' choice of law rules to determine the applicable substantive law. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law"). Under Illinois' choice of law rules, "the collateral estoppel or res judicata effect of a judgment is determined by the law of the jurisdiction where the judgment was rendered." *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Illinois Nat. Bank & Tr. Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988).

Missouri's res judicata principles apply here because the prior judgment was in St. Louis County Circuit Court. *See e.g., Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011) ("[b]ecause the prior adjudication

was in Illinois state court, we apply Illinois res judicata principles"). Before res judicata bars a claim, however, there must have been a judgment on the merits of the claim. *S.M.B. by W.K.B. v. A.T.W.*, 810 S.W.2d 601, 605 (Mo. Ct. App. 1991). "A judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by *default*, and without trial." *Laususe v. Normandy Osteopathic Hosp.*, 918 S.W.2d 953, 956 (Mo. Ct. App. 1996) (emphasis added) (quoting *Bi–State Dev. Agency v. Whelan Sec.*, 679 S.W.2d 332, 336 (Mo. Ct. App. 1984)).

A sanction judgment pursuant to Missouri Supreme Court Rule 61.01(b)(2) is not a judgment on the merits. *Peoples-Home Life Ins. Co. v. Haake*, 604 S.W.2d 1, 9 (Mo. Ct. App. 1980). In *Haake*, the decedent was survived by the first spouse, Sermon, and second spouse, Haake. In the first lawsuit, a life insurance company filed an interpleader action naming Sermon and Haake to determine the proceeds of decedent's life insurance policy. *Id.* at 3. Both Haake and Sermon filed separate answers. *Id.* Sermon alleged that the decedent was murdered, "that [ ] Haake was a suspect in the ongoing criminal investigation and that if the named beneficiaries brought about the death of the insured, then the two surviving minor children were entitled to the policy proceeds." *Id.* The court summarized the following key facts of the first lawsuit:

(a) On June 1, 1978, Defendant Haake mailed opening interrogatories to defendant Sermon.

(b) On July 15, 1978, Defendant Haake moves for judgment by default pursuant to Rule 61.01(b) upon failure of Sermon to answer interrogatories.

(c) On July 17, 1978, Defendant Sermon as guardian ad litem files answers to Haake's interrogatories and alleges inability to obtain information about the murder investigation from the Raytown Police Department.

(d) On July 20, 1978, Defendant Haake files another motion pursuant to Rule 61.01(b) alleging the answers to interrogatories are incomplete, evasive and improperly sworn to and signed.

(e) On August 28, 1978, the trial court orders Sermon to make factual and definite answers to interrogatories nos. 2, 6, 8 and 9 by September 20, 1978.

(f) On September 20, 1978, Defendant Sermon files amended answers to interrogatories.

(g) On October 3, 1978, Defendant Haake moves again for dismissal and judgment pursuant to Rule 61.01(b) for failure of defendant Sermon to comply with the court order of August 28, 1978.

(h) On October 25, 1978, Defendant Sermon files answers to interrogatories and moves the court to accept them as full and complete.

(i) On November 14, 1978, the trial court sustains defendant Haake's motion for judgment pursuant to Rule 61.01(b).

(j) On January 12, 1979, the trial court overrules defendant Sermon's motion for oral argument and orders policy proceeds paid to defendant Haake.

*Id*. Haake then filed a lawsuit against a second life insurance policy. In the second lawsuit, a different life insurance company "filed a counterclaim in the nature of interpleader for purposes of determining whether the policy proceeds were payable to [ ] Haake or the minor Sermon children." *Id*. at 4. Haake then filed a motion for summary judgment alleging the default judgment in the first lawsuit was a bar in the second lawsuit under the doctrine of res judicata. *Id*.

Although the Missouri Court of Appeals, Western District, noted that the doctrine of "res judicata is not applicable to the instant proceedings[,]" *id*. at 8, the Court recognized that collateral estoppel was a distinction contained within the doctrine of res judicata. *Id*. at 7 ("[t]he second distinction is what might be called issue preclusion, more commonly referred to as collateral estoppel, and precludes the same parties from relitigating issues previously adjudicated"). The Court in *Haake* also acknowledged for collateral estoppel to apply, "it must include an assessment of whether the prior *judgment was upon the merits*." *Id*. at 8 (emphasis added). Most importantly, the Court in *Haake* then held "[t]he sanction judgment pursuant to Rule 61.01(b)(2) entered in the first case [ ] does not support or warrant entry of summary judgment in the second case [ ] because there was *no judgment on the merits* and [Sermon] had no full and fair opportunity to litigate the matter." *Id*. at 10 (emphasis added).

After *Haake*, Missouri courts have stated that a judgment entered pursuant to pleadings stricken under Missouri Supreme Court Rule 61.01 is a judgment on the merits. The cases supporting this notion, however, do not consider a Rule 61.01 judgment in the context of res judicata or collateral estoppel. An examination of these cases shows that they rely on generalizations of Missouri precedent. Indeed, in *Keithley v. Shelton*, 421 S.W.3d 502, 505-06 (Mo. Ct. App. 2013), the Court determined that the trial court wrongly employed Missouri Supreme Court Rule 74.05(d), the rule for setting aside default judgments, because Rule 61.01 dismissals are not true default judgments, but are judgments on the merits. But *Keithley* relied on *Greasel Conversions, Inc. v. Massa*, 399 S.W.3d 456, 461 (Mo. Ct. App. 2013). *Greasel* stated the same conclusion after relying on

*Treetop Vill. Prop. Owners Ass'n v. Miller*, 139 S.W.3d 595, 599-600 (Mo. Ct. App. 2004), and *DuPont v. Bluestein*, 994 S.W.2d 96, 97 (Mo. Ct. App. 1999).

These cases rely on *Cotleur v. Danziger*, 870 S.W.2d 234 (Mo. 1994)—a case that does not involve Rule 61 sanctions, but the applicability of Missouri Supreme Court Rule 74.05(d) to trial judgments. Significantly, the Court in *Cotleur* explained that "[t]he rule continues to be that where a party . . . files a petition, then files an answer to a cross-petition, but fails to appear for trial, the judgment is not a default judgment but, rather, is a judgment on the merits." *Id*. at 237.

Like the phrase "if the shoe doesn't fit, don't wear it," the rule in *Cotleur* doesn't fit the facts of the instant case, and it will not be applied. Huff did not fail to appear at trial in the St. Louis County case. The petition was filed against him, and his pleadings were stricken as a sanction. Following *Haake*, the St. Louis County Circuit Court judgment is not a judgment on the merits, and res judicata does not bar Mirror Finish's claims.

Even if a sanction default judgment is a judgment on the merits, the cases must share four identities: "1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. 1991). The "identity of the thing sued for" is not satisfied here because Carmed 45, LLC, is suing Huff in the St. Louis County case to enforce a non-compete and non-solicit provision which arose out of his relationship with Carmed 45, LLC (Doc. 18-1, pp. 6-39). In this case, however, Mirror Finish is suing Defendants arising from matters outside of Carmed 45, LLC. The "identity

of the cause of action" is also not satisfied because the St. Louis County case arises out of Huff's resignation and breach of Carmed 45, LLC's Operating Agreement. This case arises out of Defendants' fraud and misrepresentation outside and apart from the Operating Agreement—specifically Defendants' misrepresentations of Mirror Finish's interests in CM49, LLC, CM55, LLC, and CM53, LLC (Doc. 15, p. 3).

Defendants argue that both cases involve that "same group of operative facts" (Doc. 18, p. 10). According to Defendants, if Mirror Finish "succeeds on their claims here, that would require this Court to either find (1) the Operating Agreement was invalid or (2) the Operating Agreement was valid, but Defendants engaged in some activity in contravention of the agreement terms" (*Id*. at p. 11). Defendants continue noting that a finding in either instance would contradict the findings of the St. Louis County Circuit Court because "Defendants would not have been able to prove a breach of contract claim in the Non-Compete Lawsuit, because that required evidence of the (1) 'existence and terms of a contract' and (2) 'Carmed 45 performed or tendered performance pursuant to the contract'" (*Id*.).

Defendants misread the complaint. Mirror Finish does not need this Court to determine the validity of Carmed 45, LLC's Operating Agreement, as most of Mirror Finish's claims do not concern Carmed 45, LLC. Accordingly, Defendants' Motion to Dismiss will be denied as to Mirror Finish's claims being barred by res judicata.

## III.   Collateral Estoppel

Defendants' collateral estoppel arguments also fail because a sanction judgment pursuant to Missouri Supreme Court Rule 61 is not a judgment on the merits. *Haake*, 604

S.W.2d at 9. Even if a sanction default judgment is a judgment on the merits, Missouri courts only apply collateral estoppel when: (1) the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate in the prior suit." *Coop. Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 581 (Mo. 2017) (citing *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001)).

Not only is the second factor not satisfied, but also the first element is not satisfied. Again, the St. Louis County case is centered around Carmed 45, LLC's Operating Agreement. This case is centered around Defendants' tortious behavior outside the Operating Agreement and apart from Carmed 45, LLC. The issue in the St. Louis County case is not identical to the issues presented in this case, and Defendants' Motion to Dismiss will be denied as to Mirror Finish's claims being barred by collateral estoppel.

## IV. Choice of Law

Before further evaluating the merits of Defendants' motion, the Court must determine what substantive law applies. Defendants argue that Missouri law applies to Mirror Finish's claims because Carmed 45, LLC's Operating Agreement contains a choice of law provision noting that "[t]he substantive law of Missouri will govern this Agreement without regard to its choice of laws rules except preempted by federal law" (Doc. 18-1, p. 24). Mirror Finish asserts that considering the Operating Agreement would be improper at the motion to dismiss stage (Doc. 25, p. 5).

This Court may consider documents attached to pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). While the Operating Agreement was referenced in Mirror Finish's complaint, the Operating Agreement is not central to Mirror Finish's claims based on a straightforward reading. This Court finds that it is imprecise to consider the Operating Agreement at this stage of the ligation.

Even if this Court considered the Operating Agreement, the choice of law provision does not apply to Mirror Finish's claims. Under Illinois law, choice of law provisions generally apply to disputes arising from a valid contract. *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) (applying Illinois law) ("In disputes such as this one that arise from a contract, Illinois law respects the contract's choice-of-law clause as long as the contract is valid"). In Illinois, "tort claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." *NewSpin Sports, LLC*, 910 F.3d at 306 (quoting *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F.Supp.2d 857, 862 (N.D. Ill. 2002)). "In determining whether a tort claim is contract-dependent, 'courts examine whether the action alleges a wrong based upon

interpretation and construction of the contract, or whether the claim alleges elements constituting an independent tort.'" *Id.* (quoting *Medline Indus. Inc.*, 230 F.Supp.2d at 862).

Mirror Finish's claims of unjust enrichment, fraud, breach of fiduciary duty, and civil conspiracy depend on items and representations outside the Operating Agreement and apart from Carmed 45, LLC. Indeed, unlike cases where plaintiffs rely on the relevant contract as proof of fraud, Mirror Finish is not relying on the Operating Agreement as proof of Defendants' fraud. *See e.g., Amakua Dev. LLC v. Warner*, 411 F.Supp.2d 941, 956 (N.D. Ill. 2006) (holding that "'the heart of [plaintiff's] claim is the false representation *in the contract*' itself" and therefore, the claim "could not exist without the [contract]"); *Medline Indus. Inc.*, 230 F.Supp.2d at 863 (plaintiff's fraudulent inducement claim was dependent on the contract because the plaintiff alleged that "the misrepresentation occurred when '[defendant] itself represented in the . . . [contract] that it had an 'exclusive Supply Agreement' with [an entity] . . . and that it had the right to grant exclusive sub-licenses to [plaintiff]"); *Cunningham Charter Corp. v. Learjet, Inc.*, 870 F. Supp. 2d 571, 578-79 (S.D. Ill. 2012) (acknowledging that plaintiff's fraud by silence claim was dependent on the contract because the "allegations cite to defendant's actions during the negotiation and execution of the relevant agreement and relies in part on specific terms of the agreement" and the "[plaintiff] relies on defendant's obligations as stated in the contract as giving rise to its duty to speak at the time of execution and delivery").

Mirror Finish's fraudulent inducement and tortious interference claims are also independent of the Operating Agreement. Indeed, a fraudulent inducement claim is only considered to be dependent upon a contract "where the allegedly fraudulent statements

were made in the contract." *See Medline Indus.*, 230 F. Supp. 2d at 863 (citing *Midway Home Entm't, Inc. v. Atwood Richards, Inc.*, 1998 WL 774123, at *3 (N.D. Ill. Oct. 29, 1998)). Here, Mirror Finish does not allege that the fraudulent statements or misrepresentations were made in the Operating Agreement; thus, its fraudulent inducement claim is independent of the Operating Agreement. Courts have also held that tortious interference is a tort that is independent of choice-of-law clauses. *See Medline Indus. Inc.*, 230 F. Supp. 2d at 863 (citing *Labor Ready, Inc., v. Williams Staffing, LLC*, 149 F.Supp.2d 398, 409 (N.D. Ill. 2001); *see also Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *13 (N.D. Ill. Dec. 18, 2015) ("[t]ortious interference is a state law claim, governed here by Illinois law")).

As the parties disagree on whether the substantive law of Missouri or Illinois applies, this Court must apply Illinois' choice of law rules to determine the applicable substantive law. This means that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (quoting *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). "A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered." *Id*. Illinois courts also consider "the interests and public policies of potentially concerned states . . . as they relate to the transaction in issue." *Jones v. State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249 (Ill. App. Ct. 1997).

A careful assessment of the factors cited above leads to the conclusion that Illinois

has the most significant relationship to Mirror Finish's tort claims, and therefore, Illinois law applies to these claims. The place of the injury was Illinois because Mirror Finish's principal place of business is in Illinois. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2006 WL 3754823, at *2 (N.D. Ill. Dec. 18, 2006) (in unjust enrichment terms, the place of injury is where the plaintiff allegedly "conferred" the benefit on defendants); *Garot Anderson Agencies, Inc. v. Blue Cross & Blue Shield United of Wis.*, 1993 WL 78756, at *18 (N.D. Ill. Feb. 26, 1993) ("[W]here the injury is loss of customers or trade, the injury occurs at the place of loss, . . . but it is most keenly felt at the principal place of business . . . ."). Mirror Finish's sole member, Huff, resides in Illinois (Doc. 15). Illinois is also Cosmetic Car Company's principal place of business and where it was incorporated (Doc. 24, p. 2). Missouri is the place where Mirror Finish and Midwest Dent Company were incorporated (Doc. 15), while Utah is the place where Auto Dentician's principal place of business is maintained and incorporated.

Because this Court cannot conclude that any other state has a more significant relationship with the occurrence or parties than the place of injury, Illinois law controls as to Mirror Finish's claims.

## V.    Unjust Enrichment (Count I)

Defendants assert that the unjust enrichment claim should be dismissed because it is based upon a contract. To make this argument, Defendants point out that Mirror Finish's unjust enrichment claim references the "business arrangement," and concludes "this business arrangement, however, was based on the Operating Agreement" (Doc. 18, p. 13).

Defendants would be correct *if* Mirror Finish incorporated allegations of a valid and enforceable contract into its unjust enrichment claim and attached a copy of the relevant contract. *See People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (noting that "[b]ecause unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application") (quoting L*a Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977) (citations omitted)). Instead, Mirror Finish's unjust enrichment claims appear to be grounded in fraud. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (acknowledging three distinct prongs of unjust enrichment: (1) where a benefit should have been given to plaintiff, but a third party mistakenly gave it to defendant instead; (2) where the defendant procured the benefit through some type of wrongful conduct; and (3) where plaintiff had a better claim to the benefit than the defendant for some other reason). Mirror Finish further alleges that the Operating Agreement was null and void (Doc. 15, p. 2). The Operating Agreement does not mention or refer to CM49, LLC, CM55, LLC, and CM53, LLC. Mirror Finish continues by alleging that it had a valuable ownership interest in these entities, but was misrepresented by Defendants. Thus, this Court will not dismiss Count I based on Defendants' assertion that the unjust enrichment is based upon a contract.

## VI.     Breach of Fiduciary Duty Claim (Count III)

Defendants argue that the breach of fiduciary duty claim should be dismissed because limited liability company members do not owe fiduciary duties to one another. Again, this is dependent on this Court accepting that Mirror Finish's claims are centered

solely on the parties' relationship from Carmed 45, LLC. This Court is unwilling to draw such broad conclusions at this early stage of litigation.

"To survive [the Defendants'] motion to dismiss, [Mirror Finish] only need[s] to plead facts that plausibly state[ ] a claim for relief arising out of [the Defendants'] violation of a fiduciary duty." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015). Under this standard, Mirror Finish alleges a breach of fiduciary claim because it alleges that "a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). The existence of the fiduciary relationship, whether it is solely through Carmed 45, LLC, or something else, depends on specific facts surrounding the parties' relationship, and those facts have not been fully developed at this stage of the litigation. Accordingly, the Court will not dismiss Count III on these grounds.

## VII.   Tortious Interference with Contract Claim (Count IV)

This Court need not address Defendants' substantive argument as Mirror Finish fails to allege an existence of a valid and enforceable contract with Carmed 45, LLC, or CCC-related entities. Indeed, to establish tortious interference with contractual rights, a plaintiff must allege: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) (quoting *Complete Conference Coordinators, Inc. v. Kumon N. Am., Inc.*, 915 N.E.2d 88, 93 (Ill. App. Ct. 2009) (citations omitted)).

Mirror Finish alleges that Binkley, Stokes, and Clawson tortiously interfered with Plaintiffs' interest in (1) Carmed 45, LLC, and (2) other CCC-related entities (Doc. 15, p. 6). Mirror Finish also alleges, however, that the "Operating Agreement for Carmed 45, LLC, is null and void for being in violation of state and federal law." (*Id.* at p. 2). Thus, Mirror Finish's tortious interference with a contract claim, Count IV, must be dismissed.

## VIII.   Fraudulent Inducement Claim (Count V)

"In Illinois, fraudulent inducement requires proof of five elements: '(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (quoting *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1341 (7th Cir. 1992) (citations omitted)).

Defendants conclusively assert that the fraudulent inducement claim should be dismissed because it is based on a contract that plaintiffs had a duty to read (Doc. 18, p. 16). The Court disagrees. It does not appear that the fraudulent inducement claim is based solely on the Operating Agreement, and this Court will not dismiss Count V based on this argument.

## IX.   Conspiracy Claim (Count VI)

Defendants argue that because Mirror Finish failed to state viable tort claims, its civil conspiracy claim based on those torts also fail (Doc. 18, p. 17). For the reasons explained below, Mirror Finish has not plead viable tort claims, and Defendants' Motion to Dismiss will be granted as to Count VI.

**X.     Defendants' Request for Dismissal Under Federal Rule of Civil Procedure 9(b)**

Although the Court finds that Counts I, III, and V should not be dismissed based on Defendants' specific arguments, these Counts, along with Count II, should be dismissed under Federal Rule of Civil Procedure 9(b). The rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The purpose of the elevated pleading standard is so plaintiffs "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014). When claiming fraud or deception, a plaintiff is required to allege the "who, what, when, where, and how" of a case. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). More specifically, a plaintiff is required to plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (citations omitted)).

Defendants are correct. Mirror Finish's complaint contains little about "who, what, when, where and how" the alleged fraud and misrepresentation occurred. Mirror Finish alleges Defendants misrepresented that they had a valuable ownership interest in Carmed 45, LLC, CM49, LLC, CM55, LLC, and CM53, LLC (Doc. 15, p. 2-3). Mirror Finish alleges Defendants conspired to pillage customers of Carmed 45, LLC, and provide

paintless dent repair services within the alleged Operations Area by and through other entities in which they have an ownership interest (*Id*.). Mirror Finish continues by alleging that Defendants conspired to self-deal, embezzle assets and customers, and deplete all entities in which Mirror Finish had an ownership interest of value to deprive Mirror Finish of their interest (*Id*. at p. 3). These activities, according to Mirror Finish, were part of fraudulent scheme wherein Defendants conspired to misrepresent the nature and value of Mirror Finish's ownership in the CCC-related entities and to deprive Mirror Finish of the rightful income and benefits from these entities (*Id*. at p. 4).

But these allegations are not enough, and Mirror Finish's unjust enrichment and breach of fiduciary claims, Counts I and III, which are grounded in fraud, along with the other fraud claims, Counts II and V, must be dismissed.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendants (Doc. 17) is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Defendants' arguments related to the statute of limitations, res judicata, and collateral estoppel. The motion is **GRANTED** as to Counts I–VI.

Pleading-related dismissals are normally without prejudice. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Because Mirror Finish has indicated that it would provide substantial details and facts in an amended complaint and asked for permission to file an amended complaint in its opposition to Defendants' Motion to Dismiss (Doc. 25), dismissal without prejudice is allowed.

Mirror Finish has until **February 5, 2021**, to file a Second Amended Complaint

consistent with Rule 11.

**IT IS SO ORDERED.**

**DATED:  January 15, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**