IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MIRROR FINISH PDR, LLC, and WESLEY
ADAM HUFF,

      Plaintiffs,

v.

COSMETIC CAR COMPANY HOLDINGS,
INC., COSMETIC CAR COMPANY, LLC,
MIDWEST DENT COMPANY, AUTO
DENTICIAN, INC., CHARLES DANIEL
BINKLEY, ERIC STOKES, and ANDY
CLAWSON,

      Defendants.

Case No. 3:20-CV-00440-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are a Motion to Dismiss (Doc. 38) and a Motion for Sanctions (Doc. 42) filed by Defendants Cosmetic Car Company Holdings, Inc., Cosmetic Car Company, LLC ("CCC"), Midwest Dent Company ("MDC"), Auto Dentician, Inc. ("ADI"), Charles Daniel Binkley, Eric Stokes, and Andy Clawson. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, and the Motion for Sanctions is denied.

### FACTUAL & PROCEDURAL BACKGROUND

In January 2010, Wesley Adam Huff ("Huff"), the owner of Mirror Finish PDR, LLC ("Mirror Finish"), joined CCC, MDC, ADI, to form a partnership known as Carmed 45 for the purpose of providing paintless dent repair services. (Doc. 34). To form Carmed 45, the parties allegedly agreed to adhere to a Partnership Agreement. (Doc. 39-

1, pp. 6-39). The Partnership Agreement contains a Non-compete, Nondisclosure, and Non-solicit Provision. (Doc. 39-1, pp. 16-19).

Sometime in 2012, Carmed 45, LLC, was formed. (Doc. 39-1). To form Carmed 45, LLC, Defendants contend that the parties agreed to adhere to the Operating Agreement. (Doc. 39-1, pp. 1-5). The Operating Agreement includes a provision explaining that "Carmed 45, a partnership existing under the laws of Missouri [ ] is the predecessor to the Company . . . [and] [t]he terms of the Partnership Agreement of the Partnership dated January 17, 2010, a copy of which is attached hereto, including the dispute resolution and arbitration provisions, are incorporated herein and shall apply to and govern the Company, subject to the following . . . ." (*Id.* at p. 1). In March 2013, Mirror Finish and Defendants purportedly executed the "Amendment to Carmed 45, LLC Operating Agreement" to redefine the area of operations. (Doc. 39-2). On March 31, 2015, Mirror Finish resigned its membership from Carmed 45, LLC. (Doc. 34).

In February 2017, Carmed 45, LLC, and Defendants filed a petition in St. Louis County Circuit Court alleging that Huff violated the Non-compete, Nondisclosure, and Non-solicit Provision of the Operating Agreement. During the course of the St. Louis County case, Carmed 45, LLC, and Defendants attempted to amend their petition three times. Despite their failure to properly amend the petition, on January 20, 2019, Carmed 45, LLC, moved for sanctions pursuant to Missouri Supreme Court Rule 61.01 and requested an entry of default judgment. Almost a year later, on December 27, 2019, the St. Louis County Circuit Court granted the motion for sanctions and ordered Huff's pleadings to be stricken and a default judgment be entered on behalf of Carmed 45, LLC.

The trial court entered judgment on April 10, 2020. Huff appealed. The Missouri Court of Appeals found that the trial court did not abuse discretion in the "trial court's imposition of sanctions against Huff due to continued discovery violations." *Carmed 45, LLC v. Huff*, 2021 WL 2931327, at *16 (Mo. Ct. App. July 13, 2021). Thus, the Court affirmed the trial court's default judgment in favor of Carmed 45, LLC. *Id*.[1]

On March 30, 2020, Mirror Finish and Huff (together "Mirror Finish") filed a complaint against Defendants in St. Clair County Circuit Court. (Doc. 25-1). Defendants removed the case to this Court based on federal question jurisdiction, as Mirror Finish first alleged that Defendants violated the federal Racketeer [Influenced] and Corrupt Organizations Act ("RICO"). (Doc. 1-1, pp. 8-9). Attempting to avoid the Court's jurisdiction, Mirror Finish amended its complaint to drop the RICO claim and moved to remand. (Doc. 19, p. 4). Denying the motion to remand, the Court noted it obtained supplemental jurisdiction over the state law claims, as they formed part of the same case or controversy as the RICO claim. (Doc. 23, p. 4). The Court continued finding that remand would serve only to needlessly prolong the proceedings, and the balance of economy, convenience, fairness, and comity would be best served by this Court

---

[1] At the same time, the Court of Appeals reversed the trial court's award of liquidated damages, prejudgment interest, and the trial court's injunction extending the non-compete period. *Id*. at *17. The Court then "remand[ed] to the trial court for a recalculation of damages, interest, and fees, consistent with this opinion." *Id*. Of course, the parties have differing views with regard to the impact of the opinion. Thus, the trial court has directed the parties to file briefs on this issue before November 4, 2021.

maintaining its supplemental jurisdiction over the state law claims to render a decision on Defendants' pending Motion to Dismiss. (*Id*. at p. 5).[2]

Defendants timely filed a Motion to Dismiss, arguing the First Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 17). The Motion to Dismiss was granted in part and denied in part, and Mirror Finish was provided the opportunity to file a Second Amended Complaint consistent with Rule 11. (Doc. 31).

Mirror Finish filed its Second Amended Complaint on February 5, 2021. (Doc. 34). Mirror Finish now brings five claims against Defendants, including:  unjust enrichment (Count I); fraud (Count II); breach of fiduciary duty (Count III); fraudulent inducement (Count IV); civil conspiracy (Count V). On March 5, 2021, Defendants filed another Motion to Dismiss, arguing that the Second Amended Complaint fails to state a claim under the Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Doc. 38). Then on May 13, 2021, Defendants filed their Motion for Sanctions. (Doc. 42).

<u>ANALYSIS</u>

## I.    Defendants' Request for Dismissal Under Federal Rule of Civil Procedure 9(b)

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R.

---

[2] Besides the signs of "playing games," like in *Anderson v. Aon*, 614 F.3d 361, 364 (7th Cir. 2010), the Court also finds that this case falls in at least one of the exceptions to the rule requiring district courts to relinquish jurisdiction over supplemental claims. The three exceptions, include:  "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (citation omitted). Here, Mirror Finish's state law claims fall under the second exception.

CIV. P. 9(b). The purpose of the elevated pleading standard is so plaintiffs "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014). When claiming fraud or deception, a plaintiff is required to allege the "who, what, when, where, and how" of a case. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). More specifically, a plaintiff is required to plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (citations omitted)).

### A.  Allegations Against Cosmetic Car Company Holdings

Defendants contend that "Plaintiffs make no specific allegations regarding the fraud allegedly committed by Defendants Cosmetic Car Holdings, CCC, MDC, or ADI so these defendants should be dismissed for that reason alone." (Doc. 39, p. 10). Mirror Finish fails to dispute that the complaint does not mention Cosmetic Car Company Holdings. Pursuant to Local Rule 7.1(c), a party's "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Thus, the Court deems Mirror Finish's failure to respond and oppose Defendants' Motion to Dismiss as to Cosmetic Car Holdings as an admission of the merits of the motion filed by Defendants. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Accordingly, all claims as to Cosmetic Car Company Holdings are dismissed.

### B.  Allegations Against CCC, MDC, and ADI

Mirror Finish alleges "the who." As to CCC, Charles Daniel Binkley ("Binkley") is the founder and sole owner of CCC. (Doc. 34). Binkley also is allegedly the owner of the tradename and trademark, "Carmedic." (*Id*.). Under the management and control of CCC, Carmedic's entities hold themselves out to the general public as a single business entity—Carmedic. (*Id*.). As to ADI, Mirror Finish alleges "the who." Andy Clawson is the sole shareholder of ADI. (*Id*.). ADI is a paintless dent removal provider under the Carmedic tradename. For MDC, Mirror Finish alleges "the who" by noting that Eric Stokes is the sole shareholder of MDC. (*Id*.).

Mirror Finish alleges "the what" and "the how." Specifically, Mirror Finish alleges that Binkley, Clawson, and Stokes represented to Mirror Finish that it was an equal member in Carmed 45, LLC, with equal pro-rata ownership of the same, along with CCC, ADI, and MDC. Mirror Finish alleges in detail Defendants' multi-level marketing scheme, where "[t]he remainder of the net income, fifty-percent, is paid to the other purported upline partners, (in this case CCC, ADI, and MDC) none of whom have performed any work of any kind." (*Id*.). Mirror Finish continues alleging that the upline partners—CCC, ADI, and MDC—take half the net revenue generated solely by the "downline partner," in this case Mirror Finish. Mirror Finish also alleges that "[t]he upline partners then take the customer base that the 'downline partner' has created and cultivated, and the revenue stream created thereby, and divide and redistribute it among themselves . . . by giving those customers to other Carmedic entities in which they have an ownership interest,

essentially gutting the 'business' the 'downline partner' was defrauded into believing he was building." (*Id*.).

Mirror Finish alleges "the when" and "the where." Huff was recruited by agents of CCC and Carmedic, Troy Bingham and Mike Mortensen, in the spring of 2009. (*Id*.). Then in December of 2009, Huff interviewed with Binkley. (*Id*.). "In the interview, [Binkley] repeatedly stated that becoming a Carmedic 'partner' meant 'being your own boss.'" (*Id*.). Mirror Finish continues by alleging all of Binkley's representations—and "continued, ceaselessly, until Plaintiffs constructive termination on March 31, 2015." (*Id*.). Similarly, Mirror Finish alleges that these representations were made by both "Eric Stokes and Andy Clausen repeatedly, and consistently, during Plaintiff's training which began in January of 2010 and lasted for eight weeks." (*Id*.).

Defendants insist that *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 2009 WL 2777995 (N.D. Ill. 2009), instructs on how the Court should deal with the *vague* time frame of December 2009 to March 31, 2015. The Court disagrees. In *Pirelli*, the plaintiff did not allege specific dates of the fraud, but the plaintiff alleged the defendant committed fraud by switching dosage forms on multiple occasions and identified the relevant time period as July 1, 2001, to 2005. *Id*. at *5. Here, Mirror Finish alleges that the fraud happened at least in the spring of 2009, December 2009, and January 2010. *See U.S. S.E.C. v. Santos*, 292 F. Supp. 2d 1046, 1050 (N.D. Ill.), order superseded, 355 F. Supp. 2d 917 (N.D. Ill. 2003) (defendant was provided adequate notice of plaintiff's claims when plaintiff alleged the fraud happened in or about March 1988); *Ward Enterprises, Inc. v. Bang & Olufsen*, 2003 WL 22859793, at *2 (N.D. Ill. Dec. 2, 2003) (defendant was provided adequate notice of

plaintiff's claims when plaintiff alleged the fraud happened during a month-long negotiation). The fact that the fraud continued through repeated communications until March 31, 2015, does not change the analysis at this stage, but the dates of the repeated communications will be a matter appropriate during discovery. For these reasons, Defendants' Motion to Dismiss will be denied as to Mirror Finish's claims being deficient under Rule 9(b) as to CCC, MDC, and ADI.

## II.    Statute of Limitations

### A.  Discovery Rule

Defendants bring another statute of limitations argument by first arguing that the latest specific dates at which Mirror Finish claims misrepresentation are early 2010. (Doc. 39, p. 12). According to Defendants, because the specific dates of misrepresentation occurred in early 2010, Mirror Finish's ability to assert its claims against Defendants expired in early 2015. (*Id*.).

Defendants then anticipate Mirror Finish's use of the discovery rule. Specifically, Defendants argue the assertion that Mirror Finish could not have discovered the fraud until after March 31, 2015, is too general to invoke the discovery rule, and fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(f). According to Defendants, Mirror Finish needed to "affirmatively and particularly plead the date of discovery," which they failed to do. (Doc. 39, pp. 12-13).

Under Illinois's "discovery rule," accrual does not occur until Mirror Finish "knew or reasonably should have known that [it was] injured and the injury was wrongfully caused." *Superior Bank FSB v. Golding*, 605 N.E.2d 514, 518 (Ill. 1992); *see also Singletary v.*

*Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1240 (7th Cir. 1993). Rule 9(f) provides that "[a]n allegation of time or place is material when testing the sufficiency of a pleading." FED. R. CIV. P. 9(f). The reason for Rule 9(f) is "to make ascertainable whether a cause of action is barred by the statute of limitations." *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir. 1954) (internal quotations omitted).

Defendants' argument is a nonstarter because the statute of limitations is an affirmative defense. *See United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (noting "[d]ismissal under Rule 12(b)(6) was irregular, for the statute of limitations is an affirmative defense"). Plaintiffs, like Mirror Finish, are not required to plead around defenses, and the Seventh Circuit has acknowledged that "[r]esolving defenses comes after the complaint stage." *Id.*[3]

Setting aside the fact that the statute of limitations is an affirmative defense, Defendants insist that a district court case from over 35 years ago is instructive.[4] In *Griggs v. Robinson Sec.*, 1985 WL 1163 (N.D. Ill. May 9, 1985), the plaintiffs alleged several dates of wrongdoing, and their response to the defendant's motion to dismiss conceded that they should have discovered the wrongdoing a little less than five years before the

---

[3] "It is true that, 'if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground.'" *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quoting *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015)); *see also Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) ("dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness"). That simply is not the case here.

[4] The Seventh Circuit has repeatedly reminded courts and counsel that district court opinions have no precedential value. *See, e.g., Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005).

complaint was filed. *Id*. at *4. Accordingly, the court noted that "by plaintiffs' own admission, even if we start the clock on or shortly after June 29, 1979, the securities actions are still barred by the three-year statute of limitations." *Id*. The court then held "[w]hen, as here, a complaint affirmatively indicates that the alleged fraud occurred at a remote time, and the plaintiff seeks to use the discovery rule to avoid a statute of limitations bar, it is the plaintiff's duty to affirmatively and particularly plead the date of discovery or face dismissal." *Id*. at *5.

*Griggs* is not instructive. Here, the Second Amended Complaint alleges that Defendants fraudulently misrepresented Mirror Finish's ownership interests in the business during the interview and training processes. (Doc. 34). Defendants allegedly continued to make such misrepresentations throughout the entirety of the business relationship. (*Id*.). Moreover, Mirror Finish alleges that "[Huff] [believed] he owned a tangible ownership interest . . . until after he was constructively terminated and was informed it had no value." (*Id*. at p. 13). Huff "inquired repeatedly regarding how he would receive the value of the business he had created over a period of six years." (*Id*.). But Defendants did not inform Huff until March 31, 2015, "that he owned nothing and would receive nothing." (*Id*.). It is with this background that Mirror Finish pleads that it "did not, and could not have, discovered Defendants['] fraudulent acts and representations until subsequent to March 31, 2015." (*Id*. at p. 17). Mirror Finish thus pleads that it could not have reasonably known about its injury until after March 31, 2015. Because Mirror Finish filed this cause of action on March 30, 2020—less than five years

after the earliest date at which Mirror Finish pleaded it could have discovered their injuries—Mirror Finish's claims are not barred by the statute of limitations.

### B.   The January 7, 2015 Email

Like Defendants' Motion to Dismiss Mirror Finish's First Amended Complaint, where Defendants argued that Mirror Finish's claim accrued on *March 31, 2015*, Defendants now contend that Mirror Finish's claim accrued on *January 7, 2015*. (Doc. 39, p. 15). Specifically, Defendants argue that Mirror Finish cannot plead the discovery rule to extend the statute of limitations because of an email from Mirror Finish on January 7, 2015.

This Court may consider documents attached to the pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice"). But the January 7, 2015 email was not referenced in Mirror Finish's complaint—and it is not central to Mirror Finish's claims. Thus, it not appropriate to consider the email at this stage of the litigation, and Defendants' statute of limitations argument is denied at this time.

### III.     Unjust Enrichment (Count I)

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

Defendants argue that this Court should dismiss Count I because Mirror Finish failed to adequately plead a claim for unjust enrichment. The problem is Defendants recite an incorrect characterization of what is required to plead unjust enrichment.

Relying on *HPI Health Care Servs. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (Ill. 1989), Defendants contend that Mirror Finish would have had to plead:  (1) that a benefit should have been given to Plaintiffs, but was mistakenly given to Defendants instead; (2) that Defendants "procured the benefit through some type of wrongful conduct;" *and* (3) that Plaintiffs "had a better claim to the benefit than [Defendants] for some other reason." (Doc. 39, p. 21-22). But these are not elements a plaintiff must plead. These are

three *different* possible ways to plead unjust enrichment. *See HPI*, 545 N.E.2d at 679 (placing the word "or" between the second and third pleading possibilities).[5]

Because Mirror Finish has pled that Defendants unjustly retained a benefit to Mirror Finish's detriment based on allegedly wrongful representations made by Defendants, the Motion to Dismiss is denied as to Count I.

## IV.   Fraud (Count II) and Fraudulent Inducement (Count IV)

Defendants point to the Operating Agreement to argue that Counts II and IV must be dismissed. (Doc. 39). Defendants claim that Mirror Finish had a duty to read the Operating Agreement under Illinois law, and that the Operating Agreement provides that Mirror Finish has no ownership interest in the Carmedic organization. (*Id.*). Defendants continue noting that "many of the allegations that Plaintiffs complain about or refer to in the [complaint]," according to Defendants, "are either confirmed or rejected by the terms of the Operating Agreement." (*Id.*). Defendants conclude that Mirror Finish's fraud and fraudulent inducement claims must fail because a party "'may not enter into a transaction with its eyes closed to available information and then charge that it has been deceived by another.'" (*Id.*) (quoting *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574-75 (7th Cir. 2001)).

The Court already acknowledged that "Mirror Finish does not allege that the fraudulent statements or misrepresentations were made in the Operating Agreement;

---

[5] Defendants claim that this Court portrayed *HPI* as giving a three-element pleading requirement for unjust enrichment like the Defendants characterized. (Doc. 39, pp. 21-22). But the Court was simply "acknowledging three distinct prongs of unjust enrichment," any of which may suffice to state a claim. (Doc. 31).

thus, its fraudulent inducement claim is independent of the Operating Agreement." (Doc. 31). The Second Amended Complaint does not change the Court's analysis.

To make matters worse, the Court already found that "it is imprecise to consider the Operating Agreement at this stage of the litigation." (*Id.* at p. 13). The Court already noted that "[w]hile the Operating Agreement was referenced in Mirror Finish's complaint, the Operating Agreement is not central to Mirror Finish's claims based on a straightforward reading." (*Id.*). Here, Mirror Finish did not attach the Operating Agreement to the Second Amended Complaint. Moreover, Mirror Finish only referenced the Operating Agreement one time, and it was to allege that it was "null and void for being in violation of state and federal law." (Doc. 34, p. 15).

Despite the Court's previous ruling, Defendants insist that all of the alleged misrepresentations are either confirmed or denied by the Operating Agreement. As a result, Mirror Finish has not pleaded any foundation for the relationship between the parties apart from the Operating Agreement, and the Court must find that the Operating Agreement is central to Mirror Finish's claims.

Defendants' discussion of *Minch v. City of Chicago*, 486 F.3d 294 (7th Cir. 2007), is unpersuasive. In *Minch*, the Seventh Circuit relied on a collective bargaining agreement introduced in the defendant's motion to dismiss that was never mentioned in the plaintiff's complaint. The Court noted, however, that the plaintiff did not object to the consideration of the agreement. *Id.* at 300**.** In fact, the plaintiff "cited and relied upon the [agreement] throughout . . . litigation." *Id.* The Chicago City Council also formally adopted the agreement and enacted it into law. *Id.* On these facts, the Court took judicial

notice of the agreement without converting the motion to dismiss into a summary judgment motion. *Id.*

Unlike the plaintiff in *Minch*, Mirror Finish has objected to the consideration of the agreement—and certainly does not cite or rely upon it. The Operating Agreement is also not the type of document of which the Court may take judicial notice. Although the Operating Agreement may ultimately show Mirror Finish's fraud claims to be meritless, the Court may not rely on it in deciding Defendant's Motion to Dismiss. Thus, Defendants' Motion to Dismiss as to Counts II and IV is denied.

## V.   Breach of Fiduciary Duty (Count III)

Defendants argue that Mirror Finish's breach of fiduciary duty claim should be dismissed for failure to allege sufficient facts underlying the claim. Specifically, Defendants argue that Mirror Finish fails to "describe the source of the duty." (Doc. 39, p. 23).[6]

Despite the Court concluding that Mirror Finish alleges a breach of fiduciary duty, (Doc. 31, p. 18), Defendants appear to question the Court's ruling, citing to another district court case.[7] But *Singer v. Massachusetts Mut. Life Ins. Co.*, 335 F. Supp. 3d 1023 (N.D. Ill. 2018), is unpersuasive. In *Singer*, the defendant filed a "cross-complaint seek[ing] to

---

[6] Previously, Defendants argued that the breach of fiduciary duty claim should be dismissed because limited liability company members do not owe fiduciary duties to one another. Defendants appear to make this argument again in footnote fourteen relying on Missouri law. Not only has the Court conducted a choice of law analysis revealing that Illinois law applies, but the Court addressed this argument, like many of Defendants' arguments, in its previous order. *See* Doc. 31.

[7] Again, the Seventh Circuit frequently reminds courts and counsel that district court opinions have no precedential value. *See, e.g., Midlock*, 406 F.3d at 457–58.

hold [plaintiff] liable for a breach of her fiduciary duty as trustee of the 2011 Trust." *Id*. at 1034. The court acknowledged that "[t]he cross-complaint simply notes that [plaintiff], as trustee, 'has refused to agree to make required minimum distributions to' [defendant], the beneficiary of the 2011 Trust." *Id*. According to the defendant, "the failure to make distributions 'subjects the 2011 Trust to tax liability amounting to hundreds of thousands of dollars that would not otherwise be due.'" *Id*. Based on these allegations, the court noted that the cross-complaint fails to describe "the terms of the trust or identifies any specific funds (or the amount of funds) available to the 2011 Trust, from which [plaintiff] could make distributions." *Id*.

Unlike *Singer*, this case does not deal with a trust. This case deals with Mirror Finish's membership in Carmedic partnerships or businesses, including:  Carmed 45, LLC, CM 49, LLC, CM53, LLC, and CM55, LLC. Besides alleging the source of fiduciary duty, Mirror Finish alleges facts that a fiduciary duty was breached, including allegations that:  (1) Defendants took steps at setting up competing paintless dent removal businesses; (2) Defendants took Mirror Finish's customer base; and (3) Defendants exploited their positions for their own benefit to the detriment of Carmed 45, LLC, CM 49, LLC, CM53, LLC, and CM55, LLC. (Doc. 34). Accordingly, the Court will not dismiss Count III.

## VI.    Civil Conspiracy (Count V)

Defendants argue that Count V should be dismissed because Mirror Finish failed to adequately plead a claim for civil conspiracy. Defendants argue that, because Mirror Finish's claims of fraud should be dismissed for failure to state a claim, Mirror Finish has

consequently failed to plead the unlawful act required to plead civil conspiracy. (Doc. 39, pp. 23-24). The Court has already rejected Defendants' arguments that Mirror Finish failed to state a claim for fraud and fraudulent inducement.

In a footnote, Defendants contend that the civil conspiracy claim can also be dismissed because "[i]n a corporate conspiracy, co-conspirators must be outside of the corporation." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 642 (7th Cir. 2006), *overruled by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Defendants then argue that "all Defendants were inside the organization as they were all members of Carmed 45." (Doc. 39, p. 24). Framing Mirror Finish's claim to be centered solely on the parties' relationship with Carmed 45, LLC, did not work the last time Defendants attempted this tactic—and it will not work here—because this case arises out of Defendants' fraud and misrepresentation outside and apart of Carmed 45, LLC. Accordingly, the Court will not dismiss Count V on these grounds.

## VII.   Sanctions

Under Federal Rule of Civil Procedure 11, when an attorney signs a pleading he or she "'certify[ies] to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances' that the claims have adequate foundation in fact and law and lack an 'improper purpose.'" *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (quoting Fed. R. Civ. P. 11(b)). "The rule is principally designed to prevent baseless filings." *Id.* (citation and internal quotations omitted). If a court finds a violation of Rule 11(b), "the court may impose an appropriate sanction on any attorney,

law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c).

### A. Mirror Finish's Alleged Knowledge that Claims are Time-Barred

Defendants assert that Mirror Finish knew that its claims were time-barred prior to filing this lawsuit. Specifically, Defendants claim that Mirror Finish was dishonest in its complaint when it alleged it that could not have discovered Defendants' fraudulent acts until March 31, 2015. Defendants base this allegation on emails from January and February of 2015. Relying on these emails, Defendants assert that Mirror Finish was on notice of potential misrepresentations on the part of Defendants as early as January 2015. (Doc. 43, pp. 7-12). Defendants continue noting these emails had been used as exhibits in the state-court proceeding involving both Mirror Finish and its attorneys in this suit. (Doc. 39, p. 11; Doc. 43, p. 10). As a result, Defendants argue that Mirror Finish and its counsel knew of evidence showing their awareness of the alleged misrepresentations prior to March 31, 2015. (Doc. 43, pp. 9-10).

In support, Defendants refer to yet *another* district court case from the 1980s as instructive. In *Automatic Liquid Packaging, Inc. v. Dominik*, 1987 WL 18556, (N.D. Ill. Oct. 14, 1987), the defendant moved for summary judgment arguing that the statute of limitations had accrued. The court evaluated the evidence and noted that "[t]he materials before this Court are replete with examples like this showing that [plaintiff] had every reason to know of [defendant's] intentions well before 1982." *Id*. at *2. As a result, the court found that plaintiff knew or should have known of the alleged fraud before the statute of limitations ended, thus the court dismissed plaintiff's claims.

Unlike the defendants in *Automatic Liquid*, in this case Defendants are not moving for summary judgment. This is significant as the court in *Automatic Liquid* had more materials before it to show that plaintiff had every reason to know of the defendant's intentions. Here, Defendants have provided the Court self-serving emails and other documents. The Court does not have the material it would have at summary judgment, and *Automatic Liquid* is not instructive. The Court analyzed the January 7th email, explained that it is imprecise to consider the email at this stage of the litigation, and denied Defendants' statute of limitations argument at this time. Accordingly, Mirror Finish's Second Amended Complaint is not baseless, and Defendants' Motion for Sanctions is denied.

### B. *Mirror Finish's Untimely Response & Defendants' Behavior*

Defendants also argue that Mirror Finish's response was not timely filed. Local Rule 7.1(c) allows an adverse party in a civil case to respond 30 days after service of a motion to remand, to dismiss, for judgment on the pleadings, for summary judgment, to suppress, and all post-trial motions. SDIL-LR 7.1 (c). Local Rule 7.1(g) provides, in part:

> A party opposing a motion not listed in subsection (c) shall have 14 days after service of the motion to file a written response. Failure to file a timely response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion.

SDIL-LR 7.1 (g).

A motion for sanctions is not listed in Local Rule 7.1(c), thus Mirror Finish had 14 days from service of Defendants' Motion for Sanctions to file its response. Here, Defendants filed their Motion for Sanctions on May 13, 2021. Fourteen days from May 13

was May 27, but Mirror Finish filed its opposition to Defendants' Motion for Sanctions on June 9, 2021.

Nonetheless, the Court declines to strike Mirror Finish's Response in Opposition to Defendants' Motion for Sanctions (Doc. 44), because it was submitted prior to the Court's ruling on Defendants' Motion to Dismiss and Motion for Sanctions. More importantly, Defendants' counsel has had adequate opportunity to respond substantively to the submission, as the Court did not strike Defendants' reply for being late.[8] Drawing on the "judicial experience" and "common sense," the Court denies striking Mirror Finish's Response in Opposition to Defendants' Motion for Sanctions when most of Defendants' arguments in their Motion to Dismiss has been denied.

Besides Defendants' late reply brief, Defendants' second Motion to Dismiss totaled over 26 pages. (Doc. 39). Local Rule 7.1(d) provides that "[n]o brief shall be submitted which is longer than 20 double-spaced typewritten pages in 12 point font." This alone is worrisome, but what is more troubling is Defendants' apparent challenges to the Court's last ruling on their first Motion to Dismiss. (Doc. 31). The Court ruled on res judicata, collateral estoppel, choice of law, and whether the Operating Agreement can be considered at this stage of the litigation. Yet, Defendants repeatedly reference the St.

---

[8] Defendants had seven days from service of Mirror Finish's Response in Opposition to file its reply. Seven days from June 9 was June 16. Defendants filed their reply on June 23, 2021. (Doc. 45).

Louis County lawsuit, argue that Missouri law applies,[9] and point to the same Operating Agreement.[10]

CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendants (Doc. 38) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to all Counts related to Cosmetic Car Company Holdings, Inc. The motion is **DENIED** as to Defendants' remaining arguments. Further, Defendants' Motion for Sanctions (Doc. 42) is **DENIED**. The action will proceed on Mirror Finish's claims against the remaining Defendants.

The Court will set deadlines for completion of discovery and filing of dispositive motions at the status conference next week. Counsel shall be prepared to discuss the potential for a referral to mediation and firm dates for the final pretrial conference and trial.

**IT IS SO ORDERED.**

**DATED:   October 29, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[9] Defendants again argue that Mirror Finish's breach of fiduciary duty claim "should [ ] be dismissed because non-managing LLC members do not owe fiduciary duties to one another under Missouri law." (Doc. 39, p. 23). The Court already conducted a choice of law analysis, and a careful assessment of the factors cited above led to the conclusion that Illinois law applies. (Doc. 31).

[10] Defendants would certainly be able to point to the Operating Agreement if the claims were based on the Operating Agreement. But Mirror Finish's claims are not, and Defendants' reliance on *Minch*, 486 F.3d 294, a case with completely different facts, is misplaced.